UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER FRANKLIN BEAUVAIS,<br><br>Defendant. | CR 22-30068-RAL<br><br>BRIEF IN SUPPORT OF NOTICE OF INTENT TO OFFER EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 413, 414 and 404(b) |

The United States of America, by and through undersigned counsel, submits this Brief in Support of Notice of Intent to Offer Evidence Pursuant to Federal Rules of Evidence 413, 414 and 404(b).

## BACKGROUND

On July 11, 2022, the Defendant was charged by Indictment in United States District Court for the District of South Dakota.  On September 13, 2022, a superseding indictment was filed with twenty-one (21) counts, primarily sex offenses, for criminal conduct against eight (8) victims spanning eighteen (18) years.

*J.H. (Counts I and II)*

J.H. is a first cousin, once removed, to the Defendant.  The Defendant is approximately six years older than J.H.  The Defendant first sexually abused J.H. in Mission, South Dakota, when she was 3 or 4 years old (1995-1997).  He was babysitting J.H. and her sister.  J.H. was in her bed when the Defendant

1

approached her and showed her his penis, calling it a sucker.  He guided J.H.'s hand onto his penis and instructed her how to manually stimulate it.  This act is not charged.

J.H.'s family moved away not long afterward, but J.H. moved back to Mission when she was 14.  When she was between 14 and 16 years old (2006-2008), the Defendant routinely took her on motorcycle rides during the summer months in and around the Rosebud Indian Reservation.  The Defendant was in his early-to-mid-twenties at this time.  J.H. sat behind the Defendant on these rides.  When they stopped, the Defendant would frequently stand up and adjust his pants, then surreptitiously reach behind him and tickle J.H.'s genitalia over her clothing.  Although several other motorcyclists generally accompanied the Defendant on these rides, none of them observed this conduct.  These acts form the basis for Counts I and II of the Amended Indictment.

The Defendant engaged in other, uncharged sexual conduct toward J.H. when she was 15 or 16 years old (~2008-2009).  J.H. routinely used a computer in the Defendant's residence to access Facebook.  On several occasions, the Defendant approached her from behind and fondled her breasts.  Once, when J.H. was helping him affix LED lights to his motorcycle, the Defendant placed his hand under J.H.'s shorts and rubbed her vulva over her underwear.  On three separate occasions, the Defendant asked J.H. to sit in his lap at a local retail shop named the Computer Lighthouse.  When J.H. did so, the Defendant adjusted her body over his penis and rubbed her vulva over her clothing with his fingers.  On another occasion, J.H. was playing on the drums at the Computer

Lighthouse. The Defendant sat down behind J.H. and began to rub her vulva over her clothing. Finally, J.H. became intoxicated by alcohol once and passed out at a residence. When she woke up, she had only a bra and panties on. The Defendant was removing her clothing.

*H.S.P. (Counts III and IV), E.S. (Counts V-VII) and J.S. Counts (VIII-X)*

H.S.P., E.S. and J.S. are sisters. They lived in Mission until graduating from high school. Their father employed the Defendant at the Computer Lighthouse for many years. The Defendant was a close friend of the family until November 2012, when J.S. and E.S. told their father the Defendant had been sexually molesting them.

Between 2006 and 2008, when H.S.P. was 14 or 15 years old, the Defendant deliberately grabbed one of her breasts at the Computer Lighthouse. When H.S.P. pulled away, the Defendant said he was sorry and had meant to grab something else. A second incident occurred just outside the Computer Lighthouse. The Defendant offered H.S.P. a ride on his motorcycle. She agreed and sat down behind him. The Defendant reached behind him, put his hand underneath H.S.P.'s underwear and touched her vulva, saying something like "[y]ou're so warm down here." These acts form the basis for Counts III and IV of the Amended Indictment. The Defendant was in his mid-twenties at this time.

When H.S.P. was 15 or younger, the Defendant solicited photographs of her naked chest at least five times. He also showed H.S.P. lesbian pornography at the Computer Lighthouse and routinely complimented H.S.P. on her physical

3

appearance.  Additionally, when H.S.P. was 15 or 16, the Defendant placed his hand on her inner thigh while she was in his truck.  These acts are not charged.

The Defendant began groping E.S.'s buttocks, touching her vaginal area over the clothing and placing his finger under her shirt and bra between her breasts after she began puberty.  These actions occurred at the Defendant's home, the Computer Lighthouse and in motor vehicles between 2008 and 2012, when E.S. was between the ages of 12 and 15.  J.S. saw the Defendant slap E.S.'s buttocks once.  The Defendant was in his late twenties.  The conduct in the Defendant's home and the Computer Lighthouse forms the basis for Counts V-VII.  The conduct in the motor vehicle is uncharged.  The Defendant also began complimenting E.S. on her appearance after she began puberty, including her intimate parts.

J.S. alleges the Defendant placed his finger under her shirt and waggled it between her breasts when she was twelve (12) or thirteen (13) years old (2010-2012).  The Defendant also routinely touched J.S.'s buttocks over her clothing in his home and the Computer Lighthouse when she was between 12 and 14 years old.  This conduct forms the basis for Counts VIII-X, Abusive Sexual Contact.  E.S. observed some of these acts against J.S.

The Defendant also engaged in uncharged conduct towards J.S.  When J.S. was between 12 and 14 (2010-2012), the Defendant placed his hand up her shorts and rubbed her inner thigh in his vehicle when they were at a pond outside Mission.  He withdrew his hand when J.S.'s father returned to the vehicle. In November 2012, when J.S. was 14 years old, the Defendant sent her

a text message soliciting a photograph of her breasts.  Both J.S. and a friend saw this text.  The text registry from J.S.'s cell phone shows the Defendant sent her numerous texts in early November 2012.  Finally, the Defendant began complimenting J.S. on her appearance when she was 12 or 13 years old.

<em>T.W. (Counts XI-XIII)</em>

T.W. is not related to the Defendant.  She alleges that the Defendant began a "strictly sexual," "secret" relationship with her when she was 15 years old (2008-2009).  During their relationship, the Defendant routinely picked up T.W. from her home in Mission in his truck, drove north of town on "Dump Road" and then had sexual intercourse with and performed oral sex on T.W.  The Defendant also requested "dirty" and "sexy" photographs from T.W. by text message, Facebook Messenger and in person.   This conduct forms the basis of Counts XI-XIII.  The Defendant was in his mid-to-late twenties.

In response to the Defendant's requests for dirty and sexy pictures, T.W. sent him three photographs of herself: (1) one that showed her entire nude body in front of a mirror, (2) a second in which she lay topless on a bed, and (3) a third focused on her exposed vulva.

The Defendant also engaged in uncharged sexual conduct with and toward T.W.   T.W. alleges the Defendant routinely video-recorded their trysts, occasionally without her consent, and took indecent photographs of her.  The Defendant's erstwhile girlfriend, A.A., recalled seeing a photograph of T.W. on the Defendant's phone.  T.W. was wearing only a thong and her breasts were

5

exposed. A.A. also saw other lewd photographs of T.W. on the Defendant's computer. No video-recordings or photographs have been recovered.

*J.A. – Counts XIV-XVIII*

J.A. began dating the Defendant in March 2020, moving in to his Mission residence with her children, H.B.B. and E.D.A., shortly thereafter. The Defendant became J.A.'s third-party custodian in July 2020 following her federal indictment for methamphetamine distribution.

On November 16, 2020, J.A. went to the Defendant's home in Mission to retrieve her mail. J.A. had broken up with the Defendant about one week earlier. The Defendant asked J.A. several times to sit on the bed, she eventually acquiesced. The Defendant pulled her toward him; J.A. resisted. The Defendant yanked J.A. down onto his bed, laid on top of her, placed his hands around her throat and applied pressure. J.A. wept. She felt like her face would explode.

J.A. was afraid she would die and gasped for air. The Defendant pulled off J.A.'s shirt, bra and shorts and told her to "open your fucking mouth because you're going to have this," referring to his penis. The Defendant placed his fingers in J.A.'s vagina and told her that he "owns this." The Defendant penetrated both J.A.'s mouth and vagina with his penis. J.A. pulled her pants up and slipped away into a closet; the Defendant grabbed her and told her he would do what he wanted to her whether or not J.A. liked it. She begged the Defendant to return her clothes, promising that she would not tell others about the assault. When the Defendant turned away, J.A. ran from the trailer. She

6

promptly reported this incident to her sister and to law enforcement.   This conduct forms the basis of Counts XIV and XV.

Later that day, J.A. went to the Cherry County Hospital in Valentine to undergo a sexual assault examination.   J.A. described pain all over her back, chest, genital area and head.   Hospital personnel observed bruising on her neck, under her left breast and under her left eye.   They also saw the imprint of a necklace and scratches on J.A.'s back.

After the sexual assault, the Defendant showed J.A. pictures he had taken of her when she was naked.   Some of these photographs were taken without J.A.'s consent.   The Defendant told J.A. he would post these images on the Internet and send them to her boss and probation officer if she did not move back in with him.   The Defendant also threatened to call J.A.'s probation officer and tell her J.A. was selling drugs if she did not return to him.   Due to this coercion, J.A. moved back into the Defendant's residence in late November 2020. In December 2020, the Defendant purchased a shotgun for his son.   The Defendant showed J.A. the shotgun, telling her "if you ever do me wrong, this is what you'll be getting."   The conduct described in this paragraph is not charged.

On New Years' Eve 2020, J.A. became inebriated and blacked out in the Defendant's trailer.   On January 1, 2021, the Defendant showed J.A. a surveillance recording from his trailer taken the previous evening.   The footage showed the Defendant forcing J.A. to her knees, pushing her head back and inserting his penis into her mouth.   J.A. cried and ran into the bathroom, then went to the bedroom and passed out.   The Defendant subsequently penetrated

7

J.A.'s vagina and mouth with his penis while she was unconscious.  J.A. asked the Defendant why he did those things to her.  The Defendant explained a federal judge had made J.A. his property when the court appointed the Defendant as her third-party custodian.  This conduct forms the basis for Count XVI.

On January 12, 2021, following dinner, the Defendant mixed some alcoholic drinks for J.A.  They sat on the couch together in the Defendant's trailer.  J.A. eventually fell asleep; she awoke to find the Defendant's penis in her mouth.  J.A. coughed and scooted away, asking the Defendant what he was doing.  The Defendant explained that he was trying to wake J.A.  When other techniques failed, he placed his penis in her mouth.  This conduct forms the basis for Count XVII.

### E.D.A. (Counts XVIII-XX)

E.D.A. lived with her mother, J.A., in the Defendant's trailer in Mission for most of 2020.  She was 12 years old.  During that time, the Defendant molested her twice.  One night, E.D.A. awoke in her bed to find the Defendant's hand moving down her groin towards her vulva over her shorts.  When E.D.A. shifted her legs and moved her shoulders, the Defendant desisted, gave her a hug and asked her to rouse J.A., who was sleeping on the couch.  E.D.A. woke J.A. up but did not disclose what happened.  This conduct forms the basis for Counts XVIII and XIX.  E.D.A. described another incident, approximately one week later, when the Defendant called her to his bedroom, placed his hand inside her shirt, and rubbed her stomach, back and breasts.  She described the Defendant lifting up her bra "a little."  When the Defendant inquired whether he could touch

8

E.D.A.'s buttocks, she replied "no." This conduct forms the basis for Count XX. E.D.A.'s aunt took custody of E.D.A. in December 2020 and removed her from the Defendant's home.

### A.D. (Count XXI)

A.D. dated the Defendant from approximately 1999 to 2003. While dating, they lived together in Mission. When A.D. was twenty years old (~2000), she passed out in their apartment after drinking alcohol the Defendant had prepared. On the next morning, the Defendant shared a video recording with A.D. The footage showed the Defendant placing his penis into A.D.'s mouth and an electric toothbrush into her vagina while A.D. was unconscious. This conduct is uncharged due to the statute of limitations.

In 2003, A.D. argued with the Defendant after she told him she was breaking up with him. A.D. tried to go to bed. The Defendant slapped her, put his hands around her neck and choked her. A.D. was frightened, in pain and could not breathe. She decided to let the Defendant do what he wanted so he would not further injure her. The Defendant penetrated her vagina with his penis and passed out. A.D. left and told a friend what had happened. The friend recalls A.D. telling her the Defendant had raped A.D. The friend saw severe bruising on A.D.'s body. This conduct forms the basis for Count XXI.

## LAW

### A. **Proffered 413 and 414 Evidence**

Federal Rule of Evidence 413(a) provides:

> In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.  The evidence may be considered on any matter to which it is relevant.

Similarly, Federal Rule of Evidence 414(a) provides:

> In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.  The evidence may be considered on any matter to which it is relevant.

"Sexual Assault" includes any conduct prohibited by 18 U.S.C. Chapter 109A. Fed. R. Evid. 413(d).  "Child molestation" includes any conduct prohibited by 18 U.S.C. Chapter 109A and committed with a person under 14 years of age. Fed. R. Evid. 414(d).  Here, the Defendant is charged with both sexual assault (Counts I-XII, XIV and XVI-XXI) and child molestation (Counts XVIII-XX).

Although "[e]vidence of prior bad acts is generally not admissible to prove a defendant's character or propensity to commit crime," Congress "altered this rule in sex offense cases when it adopted Rules 413 and 414 of the Federal Rules of Evidence." *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001).  However, Congress altered this rule in sex offense cases when it adopted Rules 413 and 414 of the Federal Rules of Evidence.  *United States v. Hollow Horn*, 523 F.3d 882, 887 (8th Cir. 2008).  Pursuant to Rules 413 and 414, "in sexual assault and child molestation cases, evidence that the defendant committed a prior similar offense may be considered for its bearing on any matter to which it is relevant, including the defendant's propensity to commit such offenses." *Id.* (internal quotation omitted).  Congress has explicitly rejected imposing any time limit on prior sex offense evidence.  *Gabe*, 237 F.3d at 960.  "Evidence of

10

uncharged child molestation [and sexual assault] is admissible if the prosecution provides enough evidence to support a finding, by a preponderance of the evidence, that the defendant committed the act." *United States v. Beaulieu*, 194 F.3d 918, 922 (8th Cir. 1999) (internal quotation omitted).  Once the court has determined the conduct is relevant and supported by sufficient evidence, it must then determine whether its "probative value is 'substantially outweighed' by one or more of the factors enumerated in Rule 403, including the danger of unfair prejudice." *Gabe*, 237 F.3d at 959.  There is a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *Id.*

### Notice Requirements

If the prosecutor intends to offer evidence of other sexual assaults or child molestation, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony, at least fifteen days before trial.  Fed R. Evid. 413(b), 414(b).  Trial is set for December 11, 2023; all such evidence was disclosed to defense counsel no later than December 19, 2022.

### Proffered Rule 413 and 414 Evidence is Relevant and Probative

"A relevant sexual assault is one committed in a manner similar to the charged offense." *See United States v. Never Misses A Shot*, 781 F.3d 1017, 1027 (8th Cir. 2015) (internal quotation omitted).  In evaluating the similarity of the sexual abuse, Eighth Circuit courts have considered: (1) the age of the victims, (2) the method of assault, (3) the relationship of the victims to the defendant and (4) the defenselessness of the victims.  See *Gabe*, 237 F.3d at 959; see also *United*

11

*States v. Hollow Horn*, 523 F.3d 882, 888 (8th Cir. 2008) (rape of an adult admissible in a child sex abuse trial because both tended to prove his propensity to sexually assault defenseless victims).

The proffered 413 and 414 evidence is probative and relevant. J.H.'s allegation that the Defendant guided her hand onto his penis when she was 3 or 4 years old and taught her how to stimulate him is relevant. The Defendant routinely sexually assaulted J.H. after she moved back to Mission, indicating an ongoing sexual interest in her, notwithstanding the lapse of time. The method of assault is similar to his molestation of E.D.A. In both instances, the Defendant entered a child's sleeping area who was in his care and abused her. This evidence is also admissible for non-propensity purposes under Rule 404(b) – J.H.'s molestation at a young age provides an explanation for her delay in reporting the Defendant's charged conduct against her as a teenager and is relevant as to the Defendant's intent on Counts I and II. *See United States v. Plumman*, 409 F.3d 919, 928-929 (8th Cir. 1995) (defendant's physical violence admissible other acts evidence in sexual abuse case to explain victim's delay in reporting).

J.H.'s allegation that the Defendant touched her vulva over her clothing four times at the Computer Lighthouse when she was around fifteen years old, E.S's disclosure that the Defendant routinely fondled her breasts and buttocks on hunting and fishing trips in and around Mission when she was between 12 and 14 years old and J.S.'s statement that the Defendant rubbed her inner thigh when she was between 12 and 14 years old in a motor vehicle are also relevant.

12

Both J.H.'s and E.S.'s allegations differ only in location from Counts I and II (J.H.) and V-VII (E.H.).  J.S.'s allegation is akin to conduct charged in Counts VIII-X.  It differs only in location (a truck rather than a building) and in method (touching of the inner thigh rather than buttocks and breasts).

Finally, A.D.'s allegation that the Defendant placed his penis in her mouth and an electric toothbrush in her vagina when she was unconscious is relevant. This sexual abuse occurred only a few years before the Defendant forcibly raped A.D. and evinces an ongoing contempt for her bodily autonomy.  It is very similar conduct to Counts XVI and XVII, in which the Defendant sexually abused J.A. when she was incapacitated.  Like A.D., J.A. was unconscious when the Defendant put his penis into her mouth.  Like A.D., J.A. was the Defendant's romantic partner.  Like A.D., J.A. learned of this conduct when the Defendant showed her video footage of his misdeeds.

### *Probative Value of Proffered Rule 413 and 414 Evidence Is Not Substantially Outweighed by the Danger of Unfair Prejudice*

Given the similarities between the proffered Rule 413 and 414 evidence and the conduct charged in this case, the proffered testimony will have substantial probative value.  *See United States v. Weber*, 987 F.3d 789, 793 (8th Cir. 2021).  Certainly, the proffered evidence is prejudicial to the Defendant. However, it is prejudicial for the same reason it is probative – it tends to prove the Defendant's propensity to molest female children and sexually abuse incapacitated adult women.  *See United States v. Keys*, 918 F.3d 982, 986 (8th Cir. 2019).  To constitute unfair prejudice, the evidence must create "an undue tendency to suggest decision on an improper basis."  *Gabe*, 237 F.3d at 960

(internal quotation omitted).  However, "the very purpose of Rule [413 and] 414 evidence is to show propensity." *United States v. Bentley*, 475 F. Supp. 852, 860-861 (N.D. Ia. 2007).  Evidence of propensity admitted under Rules 413 and 414 is not an improper basis upon which a jury could rely, and is thus not unfairly prejudicial in this case.  *Weber*, 987 F.3d at 793.  Moreover, because the proffered 413 and 414 evidence is so similar to the acts charged, it will "not be so facially inflammatory as to unduly divert attention from the issues of the case." *United States v. Butler*, 56 F.3d 941, 944 (8th Cir. 1995).  In addition, any potential for unfair prejudice may be greatly reduced by an appropriately tailored limiting jury instruction.  *Weber*, 987 F.3d at 789-790.  The probative value of the proffered Rule 413 and 414 evidence is not substantially outweighed by the danger of unfair prejudice and should be admitted.

### B. Proffered Rule 404(b) Evidence

Rule 404(b) of the Federal Rules of Evidence bans using prior bad acts solely to prove a person's propensity to commit criminal acts but allows such acts to be admitted if the evidence is relevant to establish motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or another "non-propensity purpose." *See United States v. Drew*, 9 F.4th 718, 722-723 (8th Cir. 2021).  Rule 404(b) evidence must be "(1) relevant to a material issue, (2) similar in kind and not overly remote in time to the crime charged and (3) supported by sufficient evidence." *United States v. Atkins*, 52 F.4th 745, 753 (8th Cir. 2022) (internal quotation omitted).  As with all proffered evidence, Rule 404(b) evidence is subject to Rule 403.  *Id.*  However, the Eighth Circuit has

14

consistently held that Rule 404(b) "is a rule of inclusion, and the district court has broad discretion in admitting Rule 404(b) evidence." *See, e.g.*, *United States v. Butler*, 56 F.3d 941, 944 (8th Cir. 1995).

*Other Sexual Touching Involving J.H. & H.S.P.*

Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. Counts I-IV allege that the Defendant sexually touched the intimate parts of J.H. and H.S.P. when they were under 16 "with an intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(3); 2246(2)(D). Touching J.H.'s breasts and vulva when she was 15 or 16, removing J.H.'s clothing when she was 16 and touching H.S.P.'s inner thigh when she was 15 or 16 is relevant to show the Defendant had this requisite intent.

The proffered 404(b) evidence concerning the Defendant's sexual touching of H.S.P. and J.H. is also similar in kind to and occurred within two years of the conduct giving rise to Counts I-IV, satisfying the second prong for admissibility under Rule 404(b). Prior bad act evidence may be admitted when it is supported by such evidence that a reasonable jury could find by a preponderance of the evidence that the defendant committed the other act. *See United States v. Winn*, 628 F.3d 432, 436-437 (8th Cir. 2010). The proffered 404(b) evidence is supported by H.S.P. and J.H.'s allegations, meeting this standard. It is admissible under Rule 404(b).

It is also not precluded by Rule 403. The probative value of proffered 404(b) evidence depends largely on whether "there is a 'close parallel' between the crime charged and the acts shown." *United States v. Gordon*, 987 F.2d 902, 908 (8th Cir. 1993) (internal quotation omitted). The correspondence between the proffered 404(b) evidence and Counts I-IV are striking – identity in victims, the lapse of no more than two years in time, and similar touching (fondling of genitalia and breasts). Additionally, evidence of prior sexual offenses committed upon the victim of the charged offense are generally admissible as 404(b) evidence. *United States v. LeCompte*, 99 F.3d 274, 277 (8th Cir. 1996). In particular, such evidence is admissible to prove a specific intent to gratify the Defendant's sexual desires for the purpose of 18 U.S.C. § 2246(3). *See United States v. Yellow*, 18 F.3d 1438, 1441 (8th Cir. 1994). Of course, we are here concerned with *subsequent* sexual acts. However, "[b]y its very terms, [Rule] 404(b) does not distinguish between 'prior' and 'subsequent acts'." *United States v. Stacy*, 2010 WL 2039660 at *15 n. 7 (E.D.Mo. 2010) (quoting *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991)). Accordingly, the mere subsequence of an act to the act charged in an indictment "does not on that ground alone make it incompetent to establish intent." *United States v. Thomas*, 593 F.3d 752, 759 (8th Cir. 2010) (internal quotations omitted). The proffered probative value of the Rule 404(b) evidence of continued sexual touching of J.H. and H.S.P. after they turned 16 is high.

Of course, it is also prejudicial. All Rule 404(b) evidence is. *United States v. Cook*, 454 F.3d 938, 941 (8th Cir. 2006). However, Rule 403 does not offer

protection against evidence that is merely prejudicial to a party's case, but only against evidence that is unfairly prejudicial. *United States v. Betcher*, 534 F.3d 820, 825 (8th Cir. 2008). "Evidence is unfairly prejudicial when it has an undue tendency to suggest decision on an improper basis or is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *United States v. Atkins*, 52 F.4th 745, 753 (8th Cir. 2022) (internal quotations omitted). There is little danger of such unfair prejudice here. Any such danger – namely that the jury would convict the Defendant based on a propensity to molest underage girls (a valid basis for conviction when predicated on Rule 413 or 414, but not 404(b) evidence) – may be tempered through a proper limiting instruction. *See Yellow*, 18 F.3d at 1442. Because this proffered evidence is so similar to Counts I- IV, it would not be so facially inflammatory as to unduly divert attention from the issues of the case. *Butler*, 56 F.3d at 944. The probative value of this proffered 404(b) evidence is not substantially outweighed by the danger of unfair prejudice. It is admissible.

*Solicitation of Photographs from H.S.P. and J.S., Complimenting E.S., J.S. and H.S.P. on Their Appearance, Showing H.S.P. Pornography and Taking Erotic Photographs of T.W.*

The Defendant's solicitation of photographs of H.S.P.'s and J.S.'s bare breasts, complimenting H.S.P., E.S. and J.S. on their appearance, showing pornography to H.S.P. and taking erotic photographs of T.W. are likewise admissible as Rule 404(b) evidence. Counts III-X all allege the Defendant

touched the intimate parts of H.S.P., E.S. and J.S. with an intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person. *See* 18 U.S.C. § 2246(2)(D) and (3). Likewise, Count XIII alleges the Defendant knowingly persuaded, induced, enticed or coerced T.W. to engage in the distribution of child pornography, or attempted to do so. *See* 18 U.SC. 2422.

Presumably, soliciting pictures of a pubescent girl's naked chest evinces some sexual interest in her – and would have the tendency to make it more likely that any touching of said girl's intimate parts was done with sexual intent and to negate any claims of mistake or accident. *See* Fed. R. Evid. 401. In a similar vein, showing a child pornography and complimenting her on the comeliness of her private areas is well-established as part of the sexual grooming process. *See, e.g., United States v. Steinmetz*, 900 F.3d 595, 601 (8th Cir. 2018); *United States v. Augard*, 954 F.3d 1090, 1092-93 (8th Cir. 2020) (pornography); and *United States v. Fox*, 642 Fed.Appx. 414, 420 (6th Cir. 2015) (flirting and using words containing explicit sexual overtures part of grooming). Taking salacious photographs of a girl has the tendency to make it likely that any attempt to entice her into the distribution of child pornography was done knowingly. The proffered 404(b) evidence is relevant to charged conduct.

This evidence – taking and soliciting photographs, lavishing lascivious compliments and exposing a child to pornography – occurred contemporaneously with the sexual abuse and abusive sexual contact and is similar in kind to the charged conduct, sharing victims and prurient motive. *See United States v. Brand*, 467 F.3d 179, 197-198 (2nd Cir. 2006) (discussing the

direct connection between child pornography and pedophilia). It is sufficiently similar in kind and close in time to the charged conduct. Likewise, the evidence is adequate to permit a reasonable jury to conclude the conduct happened by a preponderance of the evidence – the statements of H.S.P., E.S., J.S. and T.W. are sufficient alone. Of course, J.S.'s disclosure is corroborated by the text registry from J.S.'s cell phone and a witness's observation of the text message from the Defendant to J.S.; T.W.'s statement; and by A.A.'s observations of obscene photographs of T.W. on the Defendant's laptop. This evidence is admissible pursuant to Rule 404(b).

The probative value of this evidence is significant. Showing H.S.P. pornography and lewdly commenting on H.S.P, E.S. and J.S.'s appearance is a pattern of grooming directly related to the conduct charged in Counts III-X, designed to reduce their inhibitions in order to prepare the children for the Defendant's molestation. *See, e.g.*, *United States v. Guinn*, 644 F.Supp.3d 939, 952 (N.D. Okla. 2022). Likewise, taking obscene photographs of T.W. in the backseat of his truck tends to negate any claim of mistake or accident in requesting "sexy" or "dirty" pictures from her. As with the proffered 404(b) evidence of sexual touching of J.H. and H.S.P. when they were 16, there is little danger of unfair prejudice. This proffered evidence is less inflammatory than actual charged conduct. Any danger of the jury reaching a verdict based on improper propensity can be adequately mitigated through an appropriate jury instruction.

*Threats to J.A. to Disseminate Private Images, Tell Her Probation Officer*
*She Was Selling Drugs and to Harm Her*

Evidence of prior bad acts by a defendant is "admissible to show a victim's fear and its reasonableness." *See United States v. Dennis*, 625 F.2d 782, 800 (8th Cir. 1980). It may also be admitted to demonstrate a "culture of coercion in the home" and to provide a "cogent explanation" for a victim's behavior. *See United States v. Aungie*, 4 F.4th 638, 644-645 (8th Cir. 2021) (internal quotation and citation omitted). Evidence of the Defendant's blackmail and threatening conduct towards J.A. in November and December 2020 is relevant to show why J.A. went back to living in the Defendant's trailer in late November after he sexually assaulted her on November 16, 2020. It also helps explain why J.A. remained with the Defendant following subsequent sexual abuse in January 2021. It is essential to explain J.A.'s actions and the circumstances of the subsequent sexual abuse. See *United States v. LeCompte*, 108 F.3d 948, 952 (8th Cir. 1997).

The evidence is contemporaneous with the Defendant's sexual assaults of J.A. It is sufficiently similar to the charged conduct insofar as it shares a victim and a motive of control and abuse. It is supported by sufficient evidence – J.A.'s statement. This proffered 404(b) is highly probative – without it, squaring J.A.'s decision to live with the Defendant in November and December 2020 with J.A.'s allegations that he sexually abused her on November 16, 2020, may be challenging for some jurors. Although prejudicial to the Defendant, it is not *unfairly* so. While it evinces bad character, there is little danger the jury would convict the Defendant of sexual abuse because he engaged in threatening and controlling conduct towards the same victim. Given the lurid nature of the

20

alleged sexual abuse, this proffered 404(b) evidence is hardly inflammatory. Any unfair prejudice will be attenuated through a limiting instruction. Any residual prejudice will not substantially outweigh the probative value of this proffered 404(b) evidence.

Dated this 23rd day of October, 2023.

ALISON J. RAMSDELL
United States Attorney

*/s/ Carl Thunem*
_____
Carl Thunem
Wayne Venhuizen
Assistant United States Attorney
P.O. Box 7240
Pierre, SD  57501-7240
Phone: (605) 224-5402
Fax: (605) 224-8305
E-mail: carl.thunem@usdoj.gov
        wayne.venhuizen@usdoj.gov